## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THOMAS CHRISTIANSEN,      )
                         )
         Plaintiff,       )
                         )
         v.           )    C.A. No.: 1:22-cv-01086-TMH
                         )
MULTI-COLOR CORPORATION,  )
                         )
       Defendant.    )
                         )

## <u>MEMORANDUM OPINION</u>

Daniel Herr, LAW OFFICE OF DANIEL C. HERR LLC, Wilmington, DE – Attorney for Plaintiff.

John Newcomer, Jr., MORRIS JAMES LLP, Wilmington, DE; Kasey Bond, KEATING MUETHING & KLEKAMP PLL, Cincinnati, OH – Attorneys for Defendant.

July 19, 2024
Wilmington, DE

**HUGHES, UNITED STATES CIRCUIT JUDGE, SITTING BY DESIGNATION:**

Plaintiff Thomas Christiansen filed this action against Defendant Multi-Color Corporation, alleging a breach of contract and seeking damages. D.I. 1-1 at 4–5.[1] Currently before the Court is Plaintiff's Motion for Summary Judgment, D.I. 12, and Defendant's Opposition and Cross-Motion for Summary Judgment, D.I. 15. For the reasons stated below, Plaintiff's motion is GRANTED-IN-PART and DENIED-IN-PART and Defendant's cross-motion is DENIED.

## I.      BACKGROUND

### A. Factual Background

Plaintiff Thomas Christiansen (Plaintiff) is a current Delaware resident and former employee of Defendant Multi-Color Corporation (Defendant or MCC), an Ohio corporation. D.I. 1-1 at 1; D.I. 1 at 3. On November 1, 2019, while still employed by MCC, Mr. Christiansen received a letter from Defendant (the Compensation Agreement), "inform[ing him] of changes to [MCC's] sales compensation program." D.I. 1-1 at 8. The letter described MCC's "new Sales Incentive Program" which, among other things, increased Mr. Christiansen's base salary to $200,000 to be "paid on a bi-weekly basis." *Id.* The Compensation Agreement also contained a provision titled "Confidentiality/Non-compete/Non-solicitation Agreement." *Id.* at 11–16. The provision stated that "[i]n consideration of the new Sales Incentive Program,"—which provided for the increased annualized base salary—"and [Plaintiff's] continued

---

[1]      All page number citations refer to the pagination of the official docket entry and not the pagination of the original document.

employment with MCC," Plaintiff was required to "accept and agree in writing to the terms and conditions set forth in" an attached Confidentiality/Non-Compete/Non-Solicitation Agreement (the Non-Compete Agreement). *Id.* at 12–13. The provision also stated that certain portions of the attached Non-Compete Agreement

> will remain in force post-employment; provided that during the Restricted Period (as such term is defined in Section 2.3 of the [Non-Compete] Agreement)[2] [Plaintiff] will be eligible to receive severance from MCC. More specifically, in the event [Plaintiff's] employment is terminated for any reason and subject to [Plaintiff's] timely execution of a Separation Agreement and Release of Claims, MCC will provide [Plaintiff] with severance in the form of the continuation of [Plaintiff's] base salary on a bi-weekly basis from [Plaintiff's] termination through the end of the Restricted period.

*Id.* at 9. Mr. Christiansen signed both the Compensation Agreement and the Non-Compete Agreement. *Id.* at 10, 16.

On or about December 20, 2021, after nearly twenty-one years with the company, Plaintiff formally notified Defendant in writing that he would be leaving his position as a Global Key Account Director with MCC, and that his last day would be January 3, 2022. D.I. 12-1 at 15. In his resignation letter, Plaintiff, referencing the Compensation Agreement, stated his intent to "honor all the terms" in the Non-Compete Agreement "in exchange for the receipt of [his] base salary on a bi-weekly basis from the termination date through the end of the one-year restricted period." *Id.*

---

[2]     Section 2.3 of the Non-Compete Agreement defines the "Restricted Period" as "[u]pon termination of Employee's employment ('Termination Date') and throughout the period beginning as of the Termination Date and ending on the date which is one (1) year after the Termination Date." D.I. 12-1 at 9.

In a letter dated December 30, 2021, a law firm representing Defendant contacted Plaintiff "to remind [him] of [his] ongoing legal obligations to MCC," and attached a signed copy of the Non-Compete Agreement as a reference. *Id.* at 17–18. The letter did not mention the Compensation Agreement, or the severance payments Plaintiff had requested in his resignation letter. *See id.* Defendant did not provide Plaintiff with a Separation Agreement after receiving his resignation letter and, to date, has not provided him with any severance payments.

B. Procedural History

Plaintiff filed this action against Defendant in the Superior Court of the State of Delaware on May 17, 2022. *See Christiansen v. Multi-Color Corp.*, Case No. N22C-05-107-FJJ, D.I. 1-1 at 2–6 (Compl.). On June 19, 2022, the court entered a default judgment granting Plaintiff's requested relief and damages after Defendant "failed to appear, plead, or otherwise defend against the Complaint." D.I. 1-2 at 4. However, on August 2, 2022, because of a "defect in Plaintiff's service of process on, and notice to, Defendant," the court entered a stipulated order vacating the default judgment and setting a new responsive pleading deadline. *Id.* at 8–9.

On August 17, 2022, pursuant to 28 U.S.C. § 1446(a) and on the basis of diversity jurisdiction, Defendant removed the case to the United States District Court for the District of Delaware. D.I. 1. Defendant filed its Answer to the Complaint on August 24, 2022, D.I. 3 (Answer), and the parties proceeded with a first set of interrogatories and a first set of discovery requests and responses, D.I. 9, 11. In accordance with the Court's Scheduling Order, all fact discovery in this case was

4

completed by January 27, 2023. *See* D.I. 7 at 2. On March 3, 2023, Plaintiff moved for summary judgment on his breach of contract claim and sought damages. D.I. 12. Defendant opposed Plaintiff's motion and filed a cross-motion for summary judgement seeking dismissal of Plaintiff's claim on March 17, 2023. D.I. 15. This Court held a hearing on the parties' motions for summary judgment on February 22, 2024. D.I. 21.

## II.   LEGAL STANDARD

### A.   Summary Judgment

A court will grant a motion for summary judgment only when "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding the summary judgment motion, the District Court must accept as true the nonmovant's evidence and draw all reasonable inferences from the record in the nonmovant's favor.'" *E. D. v. Sharkey*, 928 F.3d 299, 305 (3d Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 514 (3d Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52). "A genuine dispute is one that 'may reasonably be resolved in favor of either party.'" *Lomando v. United States*, 667 F.3d 363, 371 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 250). "A material fact is one 'that might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

B. <u>Delaware Principles of Contract Interpretation</u>

"Under Delaware law, contract interpretation is a question of law" to be resolved by applying our well-established principles of contract interpretation. *JFE Steel Corp. v. ICI Americas, Inc.*, 797 F. Supp. 2d 452, 469 (D. Del. 2011) (citing *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)).[3] "Delaware adheres to the 'objective' theory of contracts, *i.e.* a contract's construction should be that which would be understood by an objective, reasonable third party." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (internal citation and punctuation omitted). To "'uphold[] the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein,'" and taking care not to render any part of the contract mere surplusage, or any terms or provisions "'meaningless or illusory.'" *Iron Branch Assocs., LP v. Hartford Fire Ins. Co.*, 559 F. Supp. 3d 368, 378 (D. Del. 2021) (quoting *Osborn*, 991 A.2d at 1159). Furthermore, "'[i]n giving sensible life to a real-world contract, courts must read the specific provisions of the contract in light of the entire contract.'" *Weinberg v. Waystar, Inc.*, 294 A.3d 1039, 1044 (Del. 2023) (quoting *Chicago Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 913–14 (Del. 2017). When interpreting a contract, Delaware courts "enforce the plain meaning of clear and unambiguous

---

[3]       Both parties cite Delaware contract law in their briefing before this Court. The Compensation Agreement does not contain a choice of law provision and the parties have not argued for this Court to apply a different state's contract law. Thus, this Court applies Delaware contract law to interpret the Compensation Agreement.

language." *Manti Holdings, LLC v. Authentix Acquisition Co.*, 261 A.3d 1199, 1208 (Del. 2021).

A court applying Delaware law to interpret a contract must effectuate the intent of the parties. *See Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). In doing so, "the Court must first determine whether a contract is unambiguous as a matter of law." *JFE Steel*, 797 F. Supp. 2d at 469 (citing *Nw. Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996)). "When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions." *Osborn*, 991 A.2d at 1159–60. "If a contract is ambiguous, we will apply the doctrine of *contra proferentem* against the drafting party and interpret the contract in favor of the non-drafting party." *Id.* at 1160. Contract language is ambiguous if "we may reasonably ascribe multiple and different interpretations." *Id.* (citing *Twin City Fire Ins. Co. v. Delaware Racing Ass'n*, 840 A.2d 624, 628 (Del. 2003). "An interpretation is unreasonable if it 'produces an absurd result' or a result 'that no reasonable person would have accepted when entering the contract.'" *Manti*, 261 A.3d at 1208 (citing *Osborn*, 991 A.2d at 1160). "Contract language is not ambiguous merely because the parties dispute what it means." *Atla Berkely VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012) (citing *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997)). "The determination of ambiguity lies within the sole province of the court." *Osborn*, 991 A.2d at 1160.

III.   **DISCUSSION**

The Complaint asserts a breach of contract claim against Defendant, alleging that MCC violated the Compensation Agreement by failing to provide Plaintiff with a Separation Agreement upon his resignation and by failing to pay Plaintiff's severance as provided in the restrictive covenant provision. Compl. ¶ 22. According to Plaintiff, he complied with the Non-Compete Agreement from the date of his termination through the required one-year Restricted Period. *Id.* at ¶ 14. Accordingly, Plaintiff seeks summary judgment on the breach of contract claim, and damages totaling the amount of severance payments Defendant allegedly owes Plaintiff for the one-year Restricted Period (*i.e.*, his $200,000 base salary) plus pre- and post-judgment interest. *Id.* at 5. In response, Defendant asserts two primary arguments contesting Plaintiff's breach of contract claim. First, Defendant argues that Plaintiff was not entitled to receive severance because Plaintiff's employment was not "involuntarily terminated by MCC" as allegedly required by the Compensation Agreement. D.I. 15 at 7. Second, Defendant argues that MCC was not obligated under the Compensation Agreement to provide Plaintiff with a Separation Agreement or Release of Claims, which it asserts was an additional condition to Plaintiff's severance eligibility. *Id.* at 9. Defendant also seeks summary judgment in its favor on the breach of contract claim and contests Plaintiff's entitlement to the full amount of damages. *Id.* at 4, 9.

The crux of the parties' dispute turns on two main contract interpretation issues: first, whether the contract phrase "your employment is *terminated for any*

*reason*"—as stated in the Compensation Agreement—should be interpreted to include voluntary resignations, D.I. 1-1 at 9 (Exhibit A to Compl.) (emphasis added); and second, whether Defendant had an obligation under the Compensation Agreement to provide Plaintiff with a Separation Agreement upon his resignation. The Court will begin by addressing each contract interpretation issue, and will then address the merits of the summary judgment motions.

A. <u>Contract Interpretation</u>

1. "Termination"[4]

Plaintiff asserts that the Compensation Agreement is unambiguous, arguing that both the Compensation Agreement and the Non-Compete Agreement "indicate, clearly, the parties' intent regarding the word 'termination.'" D.I. 12, ¶ 22. According to Plaintiff, "[p]er both agreements, the parties considered termination to occur whether Defendant elected to end Plaintiff's employment or Plaintiff elected to resign." *Id*. As such, Plaintiff argues that neither agreement at issue here distinguishes between involuntary termination by the employer or voluntary resignation by an employee. *Id*. at ¶ 23. Absent such distinction, Plaintiff contends that the term "employment is terminated for any reason" is clear and unambiguous, and the plain meaning includes employment terminated by an employee's own voluntary resignation. Plaintiff also argues, in the alternative, that if this Court were to find the language ambiguous, the "Comp[ensation] Agreement must be construed

---

[4]    For clarity, this Court's discussion of "termination" is intended to apply to all iterations of the word as used by the parties throughout their briefing and in the relevant agreements.

against Defendant because Plaintiff did not draft it or negotiate its terms." *Id.* at
¶¶ 24, 25.

Defendant disagrees. Noting that other courts have "recognized a distinction
between 'termination' and 'resignation,'" Defendant asks this Court to do the same.
D.I. 15 at 6 (citing *Henglein v. Colt Indus. Operating Corp. Informal Plan*, 91 F. App'x
762, 766 (3rd Cir. 2004) (finding that plaintiffs who had voluntarily resigned were
not "terminated" as defined by the relevant benefits plans and thus not eligible for
certain benefits). According to Defendant, the different provisions of the
Compensation Agreement use the word "terminate" in "very different ways," and
Plaintiff's interpretation is incorrect. *Id.* at 6. Defendant contends that therefore, the
meaning of the word "'terminate' in one provision does not dictate how that word must
be understood when used differently in other provisions." *Id.* at 7. As an example of
such "very different" uses, Defendant points this Court to the provision of the
Compensation Agreement that discusses confidentiality/non-compete/non-
solicitation and the paragraph that defines an "Employee-at-Will." *See* D.I. 15 at 6–
7; *see also* D.I. 1-1 at 9. Defendant describes the confidentiality provision as passively
stating: "in the event your employment is terminated for any reason," D.I. 1-1 at 9,
while the definition of an at-will-employee actively states: "either you or [MCC] may
terminate your employment at any time, and for any or no reason," D.I. 1-1 at 10, *see
also* D.I.15 at 6–7. In Defendant's view, because the confidentiality provision uses
"terminated" in a "passive voice" and does not "mirror how termination is discussed"
in the definition of an at-will-employee, the two terms cannot mean the same thing.

D.I. 15 at 6–7. Instead, Defendant asserts that these differences require this Court to interpret "terminate"—when used in the confidentiality provision—as limited to situations "where the Plaintiff is the party being acted upon (*i.e.*, when Plaintiff is involuntarily terminated by MCC)." *Id.* Defendant also appears to suggest that, in the context of the confidentiality provision's discussion of severance, interpreting "terminate" to include voluntary resignations "runs counter to the agreement's overall scheme or plan." *Id.* (citing *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985)).

The Court is unpersuaded by Defendant's argument and finds the contract language at issue here unambiguous. When read as a whole, the term "in the event your employment is terminated for any reason" must be construed to include an employee's voluntary resignation. The Compensation Agreement states that the Non-Compete Agreement "will remain in force post-employment; provided that during the Restrictive Period . . . you will be eligible to receive severance from MCC." D.I. 1-1 at 9. Importantly, the relevant provision does not limit its applicability to specific "post-employment" situations (*i.e.*, voluntary resignations versus involuntary terminations). Such language does not indicate that the restrictions are only intended to remain in force when an employee is involuntarily terminated by Defendant.

Furthermore, "terminate" as used in the relevant provision of the Compensation Agreement—when read in the light of the entire agreement and the Non-Compete Agreement therein referenced—is intended to encompass situations when an employee voluntarily resigns. Beyond the plain language of the agreements,

11

the conduct of both parties supports such an interpretation. First, Plaintiff, in his resignation letter, stated his intent to abide by the Non-Compete Agreement from the date of his termination through the one-year Restricted Period as stated in the Compensation Agreement. *See* D.I. 12-1 at 15. Similarly, following Plaintiff's voluntary resignation, Defendant's counsel sent a letter reminding Plaintiff of his continuing obligations to abide by the Non-Compete Agreement, as agreed to in the Compensation Agreement. *See* D.I. 12-1 at 17. Both parties intend for the relevant provision of the Compensation Agreement and the Non-Compete Agreement to apply to Plaintiff's voluntary resignation.

Yet, Defendant now poses a contradictory and inconsistent interpretation: if Defendant's interpretation of "terminate" were correct, one single sentence of the Compensation Agreement would apply exclusively to involuntary terminations by MCC, while the remainder of the agreement would apply to both voluntary or involuntary terminations by either party. The Court finds that this a result not supported by the plain language of the Compensation Agreement. The plain language of "employment terminated for any reason" unambiguously means an employee's at-will employment may be terminated at any time, for any or no reason, including by an employee's voluntary resignation.

While it is true that in certain situations courts have recognized a distinction between "resignation" and "termination," those situations are distinguishable. *See Henglein*, 91 F. App'x at 766. The court in *Henglein* found it relevant that the language of the challenged benefits plan specifically identified the limited

12

"situations" and "circumstances" in which former employees would be entitled to benefits. *Id.* (noting that the relevant plans defined "termination" as resulting from "job elimination" or "economic layoff"). Unlike the disputed language in *Henglein*, the contract language at issue here clearly and broadly states "employment is terminated *for any reason*." D.I. 1-1 at 9 (emphasis added). Because the Compensation Agreement does not explicitly limit or define the situations in which employment is considered "terminated," *Henglein* is inapplicable and does not control here.

Furthermore, even if this Court concluded that the language of the Compensation Agreement was ambiguous, the contract must be construed "in favor of the non-drafting party," *i.e.*, Plaintiff. *Osborn*, 991 A.2d at 1160. Thus, applying the long-standing doctrine of *contra proferentem*, this Court would still interpret "terminated" to include an employee's voluntary resignation. To the extent Defendant argues that the Court should not adopt such an interpretation because it would "lead[] to absurd results," or a contract "that no reasonable person would have accepted when entering the contract," this Court disagrees. D.I. 15 at 7–8 (quoting *MarkDutchCo 1 B.V. v. Zeta Interactive Corp.*, Civil Action No. 17-1641-CFC, 2020 WL 4432860, at *5 (D. Del. July 31, 2020) ("Courts should avoid interpreting a term in an unreasonable way that would yield an absurd result or that would render other contractual language superfluous." (cleaned up and citation omitted))). In addition to abiding by the Non-Compete Agreement for an entire year, the Compensation Agreement conditions eligibility for severance payments on a former employee's waiver of any claims against Defendant. Regardless of whether an employee

voluntarily resigns or is involuntarily terminated by MCC, there are valid reasons that both parties would accept such terms. For a former employee, it would be an incentive to release any claims against MCC and would provide security against economic hardship while the employee complied with the Non-Compete Agreement during the one-year Restricted Period. For MCC, it would protect against any future claims by a former employee, as well as provide assurance that its former employee will not engage in competitive behavior for the next year. And when a former employee is as experienced as Plaintiff, MCC would reasonably have even more interest in providing severance in the hopes that it prevents the employee from taking their extensive knowledge and expertise to a competitor. Thus, contrary to Defendant's assertion, regardless of whether an employee voluntarily resigns or is involuntarily terminated by the company, it would not be unreasonable for both parties to accept the terms of such an agreement.

Defendant additionally argues that Plaintiff's interpretation is absurd because it creates an invalid contract by placing "an obligation upon MCC for which the [c]ompany received no consideration." D.I. 15 at 8. Defendant asserts that "[t]he Compensation [Agreement] makes clear the consideration for the offer of severance is 'timely execution of a Separation Agreement and Release of Claims.'" *Id*. at 8–9. The Court disagrees. Detrimental to Defendant's argument is what appears to be a misunderstanding of which agreement provides Plaintiff with the right to receive severance. D.I. 15 at 9. The Compensation Agreement explicitly provides for the possibility of severance; there was not a separate severance contract for which

additional consideration would have been required. While Defendant attempts to overcome this issue by positing that the severance obligation "is to be construed as divisible" from the remainder of the Compensation Agreement, such argument is unavailing. D.I. 15 at 10 (quoting *Palumbo v. Ewing*, 540 F. Supp. 388, 391 (D. Del. 1982)). Defendant does not seek to divide the relevant confidentiality/non-compete/non-solicitation provision from the rest of the Compensation Agreement; instead, Defendant attempts to separate *a single sentence* of that provision from the remainder of the paragraph. As such, this Court does not view the Compensation Agreement as divisible in the manner proposed by Defendant. Nor does the plain language of the Compensation Agreement or the overall structure of the paragraph support such a division. Therefore, the Court rejects Defendant's argument to the extent it relies on the existence of a separate contract for severance.

Defendant does not challenge the validity of, or consideration for, the Compensation Agreement. The timely execution of a Separation Agreement and Release of Claims and compliance with the Non-Compete Agreement were simply conditions the Compensation Agreement placed on eligibility for severance. As such, Defendant has a valid obligation to provide severance payments to a former employee who meets all of the conditions outlined in the Compensation Agreement.

2. Providing the Separation Agreement and Release of Claims

Plaintiff alleges that Defendant breached the Compensation Agreement by failing to provide a Separation Agreement upon his resignation, and by failing to pay severance for his compliance with the Non-Compete Agreement throughout the one-

year Restricted Period. Defendant responds that it did not breach the Compensation Agreement because it was under no obligation to provide Plaintiff with a Separation Agreement or Release of Claims. Rather, Defendant contends that "just as Plaintiff is provided with the choice of whether or not to consent to execute a Separation Agreement and Release of Claims, so too does MCC have the choice of whether to offer a Separation Agreement and Release of Claims at all." D.I. 15 at 5. According to Defendant, even when a former employee is willing to sign a Separation Agreement and Release of Claims, and abide by the Non-Compete Agreement—as is the case with Plaintiff here—MCC may simply choose to not offer such documents. Yet Defendant does not indicate whether its decision to offer the documents discussed in the Compensation Agreement depends on the circumstances of an employee's termination.

The Court does not agree with Defendant's understanding of the Compensation Agreement as it relates to MCC's provision of the Separation Agreement or Release of Claims. If Defendant's interpretation were correct, it would essentially allow MCC to intentionally avoid ever having to pay severance, by arbitrarily and unilaterally withholding one of the conditions for receiving severance from an otherwise eligible former employee. Importantly, however, Defendant's interpretation does not relieve a former employee of his obligation to abide by the Non-Compete Agreement in the absence of such documents. This is apparent by the post-resignation letter Plaintiff received from Defendant's counsel, "remind[ing him] of [his] ongoing legal obligations to MCC." D.I. 1-1 at 18. In essence, Defendant's interpretation would allow it to

enforce the Non-Compete Agreement, while unilaterally withholding severance payments, purely because it wants to. Although the Compensation Agreement does not contain explicit language detailing the provision of the Separation Agreement or Release of Claims, Defendant's interpretation would result in an absurdly one-sided agreement that no reasonable employee would have accepted when entering into the agreement. Therefore, Defendant's interpretation is unreasonable and this Court will not adopt it.

The only reasonable interpretation of the Compensation Agreement is that MCC is obligated to provide a terminated employee with a Separation Agreement and Release of Claims for that employee to consider signing. A terminated employee has the right to receive the conditional documents that would make him eligible to receive severance. The employee may choose not to sign those conditional documents, thereby forgoing their entitlement to severance, but the Compensation Agreement cannot be construed as giving Defendant the right to unilaterally and arbitrarily deprive the employee of that choice from the outset. Notably, under this interpretation, a former employee's obligations under the separate Non-Compete Agreement remain in place, even if the employee chooses not to accept one of the conditions outlined in the Compensation Agreement for severance eligibility.

B.  <u>Motions for Summary Judgment</u>

Plaintiff seeks summary judgment on his breach of contract claim and seeks damages. Defendant also seeks summary judgement on the breach of contract claim, but argues in the alternative that Plaintiff's motion should be denied because

"questions of fact remain regarding whether Plaintiff has abided by the terms of his Non-Compete Agreement." D.I. 15 at 12. In reviewing the parties' motions, the Court must draw all reasonable inferences in favor of the non-moving party.

1.  Count I: Breach of Contract

Plaintiff alleges that Defendant breached the Compensation Agreement by failing to provide him with a Separation Agreement upon his resignation and severance payments for his compliance with the Non-Compete Agreement, as set forth in the restrictive covenant provision. Plaintiff also asserts that he "has abided by the Non-Compete Agreement despite Defendant failing to provide the Severance Payments," D.I. 12, ¶ 17, and that he "has been—and continues to be—willing to sign a reasonable 'Separation Agreement and Release of Claims', as contemplated in the Comp[ensation] Agreement," *id.* at ¶ 19.

Under the Court's interpretation of the Compensation Agreement, the Defendant is obligated to provide an employee whose employment is terminated— either voluntarily or involuntarily—with a Separation Agreement and Release of Claims. Defendant's failure to do so would amount to a breach of the Compensation Agreement. It is undisputed that Plaintiff voluntarily resigned from his position with MCC. Compl. ¶ 11; Answer ¶ 11. It is also undisputed that Defendant never provided Plaintiff with a Separation Agreement. Compl. ¶ 12; Answer ¶ 12. Because there is no genuine dispute of these material facts, the Court finds Defendant breached the Compensation Agreement by not providing Plaintiff with a Separation Agreement upon his termination as a matter of law.

18

Plaintiff, in his Motion for Summary Judgment, asserts that he "has been—and continues to be—willing to sign a reasonable 'Separation Agreement and Release of Claims', as contemplated in the Comp[ensation] Agreement, to receive the severance payments that are owed to [him]." D.I. 12, ¶ 19. Aside from arguing that MCC was not obligated to provide such documents, Defendant does not address Plaintiff's assertion. Nor does Defendant present any evidence to dispute or contest Plaintiff's statement that but for Defendant's failure to provide the Separation Agreement, Plaintiff would have signed the conditional documents as required for severance eligibility. Therefore, finding no genuine dispute of material fact, the Court finds as a matter of law, Plaintiff would have been eligible to receive severance payments on a bi-weekly basis—as stated in the Compensation Agreement—for the duration of Plaintiff's compliance with the Non-Compete Agreement during the Restricted Period. Because it is undisputed that Defendant has not paid Plaintiff any severance since the date of his termination, Compl. ¶ 12; Answer ¶ 12, the Court further finds that Defendant breached the Compensation Agreement by failing to provide such payments during the time of Plaintiff's compliance as a matter of law. Accordingly, as to the sole claim for breach of contract, the Court grants Plaintiff's Motion for Summary Judgment and deny Defendant's Cross-Motion for Summary Judgment.

2. Damages

Plaintiff seeks damages in the amount totaling the outstanding severance payments allegedly owed by Defendant. According to Plaintiff, he has abided by the

Non-Compete Agreement for the entirety of the one-year Restricted Period, entitling him to the full amount of severance as detailed by the Compensation Agreement, plus pre- and post-judgment interest. The Compensation Agreement explicitly states that severance would be provided "in the form of the continuation of [Plaintiff's] base salary on a bi-weekly basis from [Plaintiff's] termination date through the end of the Restricted Period. If, however, [Plaintiff] fail[s] to comply with the restrictive covenants during the Restricted Period, severance will be discontinued immediately . . . ." D.I. 1-1 at 9–10. The Compensation Agreement also indicates that Plaintiff's base salary was $200,000. *Id.* at 8. Therefore, if Plaintiff complied with the Non-Compete Agreement for the entirety of the one-year Restricted Period, Plaintiff would be entitled to one year's worth of bi-weekly severance payments equaling his full $200,000 base salary.

Defendant disputes Plaintiff's assertion that he never violated the Non-Compete Agreement. *See* D.I. 15 at 12. In a declaration, counsel for Defendant states that "[i]n response to discovery requests in this case, Plaintiff admitted he worked for a company providing consulting regarding the 'label printing market,' which is the business of Defendant." *See* D.I. 15-1 at 1. Attached to the declaration, Defendant submits a copy of an email dated April 7, 2022, that seemingly indicates Plaintiff provided work or a consultation to a possible competitor during the Restricted Period. *See id.* at 3. In the email, the sender—an associate for a company called proSapient— writes "[o]ur client would like to have a consultation with you." D.I. 15-1 at 3. Defendant argues that this evidence creates a question of fact not suitable for

summary judgment. D.I. 15 at 12. During the hearing before this Court, Plaintiff admitted that, although it "is not in the record," there was "this brief consulting engagement . . .with a company called proSapient." Hr'g Tr. 4:2–5, Feb. 22, 2024, D.I. 25. Nevertheless, Plaintiff reasserted his position that "he didn't" violate the Non-Compete Agreement, seemingly arguing that the consulting engagement did not amount to a breach. *Id.* at 3:22–4:1. Plaintiff also argues that Defendant has waived the right to argue that Plaintiff violated the Non-Compete Agreement because Defendant did not assert the alleged breach "as part of its affirmative defenses" nor "make a counterclaim on the issue." D.I. 16, ¶ 20. Plaintiff asserts that "[f]ailure to raise an affirmative defense amounts to a waiver." *Id.* (citing *City of Wilmington v. Spencer*, 391 A.2d 199, 203 (Del. 1978)).

At the outset, for two main reasons, this Court rejects Plaintiff's contention that Defendant may not dispute the assertion that Plaintiff abided by the Non-Compete Agreement for the one-year Restricted Period. First, in its Answer to the Complaint, Defendant denies Plaintiff's allegation that he did not violate the Non-Compete Agreement, Answer ¶ 14, and asserts multiple affirmative defenses such as "unclean hands" and "laches," *id.* at 4. Second, Defendant is not asserting Plaintiff's alleged breach of the Non-Compete Agreement as a counterclaim, but rather, as evidence of a genuine question of material fact not appropriate on summary judgment. Waiver is not at issue here.

Further, accepting Defendant's evidence as true and drawing all reasonable inferences in its favor, this Court finds a genuine dispute of material fact as to

whether Plaintiff complied with the Non-Compete Agreement for the one-year Restricted Period. In Plaintiff's December 20, 2021, resignation letter, Plaintiff stated that his "last day w[ould] be 1/3/2022." D.I. 12-1 at 15. Without question, the April 7, 2022, email was well within the one-year Restricted Period. Therefore, when viewed in favor of Defendant, this evidence raises a genuine question as to whether Plaintiff complied with the Non-Compete Agreement throughout the entire one-year Restricted Period. Additionally, Plaintiff admits to this Court that he briefly provided consulting work for proSapient. Hr'g Tr. 4:2–5. However, this does not resolve the question of whether such consulting engagement amounts to a breach of the Non-Compete Agreement, and if so, what date the alleged breach would have occurred on.

Because severance payments were to be paid on a bi-weekly basis, the Plaintiff's total damages necessarily depend on the length of time Plaintiff complied with the Non-Compete Agreement. Therefore, this Court cannot appropriately calculate Plaintiff's requested relief without first determining the accurate dates Plaintiff complied with the Non-Compete Agreement. Thus, summary judgment is not appropriate as to damages and this Court denies Plaintiff's Motion for Summary Judgment on the issue.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Plaintiff's Motion for Summary Judgment (D.I. 12) is GRANTED-IN-PART as to the breach of contract claim and DENIED-IN-PART as to the requested damages. Defendant's Cross-Motion for Summary Judgment (D.I. 15) is DENIED.

22